# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____
(To be supplied by the court)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 11 2025

JEFFREY P. COLWELL
CLERK
_____

_Jeffrey Delbridge_ , Plaintiff

v.

**Jared Polis (Governor of Colorado)**
_____

**Moses Andre Stancil (Ex. Dir. of CDOC)**
_____

**Allison Talley (SOTMP Admin.)**
_____

**Amanda Retting (Head of SOTMP)**
_____ , Defendant(s).

Jury Trial requested:
(please check one)
__XX__ Yes ____ No

_(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)_

---

## PRISONER COMPLAINT

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

**A.     PLAINTIFF INFORMATION**

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Jeffrey Delbridge, 195675, (FCF) P.O Box 999 Canon City Co 81215
_____
(Name, prisoner identification number, and complete mailing address)

Jeff Delbridge
_____
(Other names by which you have been known)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____   Pretrial detainee

____   Civilly committed detainee

____   Immigration detainee

__X__  Convicted and sentenced state prisoner

____   Convicted and sentenced federal prisoner

____   Other: (*Please explain*) _____

**B.     DEFENDANT(S) INFORMATION**

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:   **Jared Polis, Governor of Colorado**
_____
(Name, job title, and complete mailing address)

**200 E. Colfax Ave., Denver, CO   80202**

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X__ Yes ____ No (*check one*). Briefly explain:

**State employee acting in the course of assigned**

**duties.**

Defendant 1 is being sued in his/her __X__ individual and/or __X__ official capacity.

2

Defendant 2:    **Moses Andre Stancil, Executive Director of CDOC**

(Name, job title, and complete mailing address)

**1250 Academy Park Loop, Colorado Springs, CO  80910**

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X__ Yes ____ No (*check one*).  Briefly explain:

**State employee acting in the course of assigned**

**duties.**

Defendant 2 is being sued in his/her __X__ individual and/or __X__ official capacity.

Defendant 3:    **Allison Talley, SOTMP Administrator**

(Name, job title, and complete mailing address)

**1250 Academy Park Loop, Colorado Springs, CO 80910**

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __X__ Yes ____ No (*check one*).  Briefly explain:

**State employee acting in the course of assigned**

**duties.**

Defendant 3 is being sued in his/her __X__ individual and/or __X__ official capacity.

## C.    JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

__X__    State/Local Official (42 U.S.C. § 1983)

____    Federal Official

As to the federal official, are you seeking:

____ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)

____ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

__X__    Other: (*please identify*) _28 USC § 1331_

3

**B.**     **Defendant Information (Cont.)**

Def. 4:   Amanda Retting, Head of SOTMP

1250 Academy Park Loop, Colo. Spgs., CO  80910

Defendant was acting under color of state law. Yes.

Defendant is a state employee in the course of assigned duties.

Defendant is sued in both individual and official capacities.

Def. 5:   Chris Lobanov-Rostovsky, Head of SOMB

1250 Academy Park Loop, Colo. Spgs., CO  80910

Defendant was acting under color of state law. Yes.

Defendant is a state employee in the course of assigned duties.

Defendant is sued in both individual and official capacities.

Def. 6:   Shane Stucker, Warden of Fremont Correctional Facility

57500 E. U.S. Hwy. 50 @ Evans Ave., Canon City, CO  80212 — The CDOC Canon Complex

Defendant was acting under color of state law. Yes.

Defendant is a state employee in the course of assigned duties.

Defendant is sued in both individual and official capacities.

4

## D.     STATEMENT OF CLAIMS

### INTRODUCTION

This case comes before the Court based upon the refusal of the Colorado Department of Corrections (CDOC) to provide prescribed mental healthcare to its prisoners.  Specifically, sex offender treatment, as administered by the Sex Offender Management Board (SOMB) and named the Sex Offender Treatment and Monitoring Program (SOTMP).  In Colorado, persons that are charged and convicted under the Sex Offender Lifetime Supervision Act (SOLSA), CRS Sec. 18-1.3-1001 to 18-1.3-1012 are sentenced to indeterminate periods of years up to and to include the entirety of their natural lives.  (CRS Sec. 18-1.3-1004(1)(a))  Under SOLSA, the indeterminately sentenced prisoner is seen by a mental health clinician, and diagnosed. SOTMP Sex Offender treatment is required by statute, is part of the sentence, and is prescribed by the diagnostician.

A prisoner convicted of a sex-related offense and sentenced to a determinate period of years is also referred for SOTMP by the CDOC.  A CDOC mental health clinician will diagnose the prisoner and prescribe SOTMP Sex Offender treatment.

Sex Offender treatment is administered at a limited number of facilities.  Access to SOTMP is further limited by a lack of sufficient SOTMP providers to serve the prisoners that are required by statute, sentenced, and/or prescribed to receive sex offender treatment.  The demand for access to the SOTMP is such that more than one thousand CDOC prisoners are going without mandatory, prescribed sex offender treatment.

The denial of necessary mental health care that is prescribed by a mental health professional represents a violation of the Eighth Amendment proscription against cruel and unusual punishments.  It is deliberately indifferent to a serious mental health need, one which inflicts an unnecessary suffering on the sex offender patients that is incongruous with contemporary standards of decency.

No reasonable person would believe it proper to allow a patient in renal failure to suffer without dialysis treatment.  No

5

reasonable person would believe it proper to allow a patient with
Major Depressive Disorder (MDD), Social Anxiety Disorder (SAD),
Schizophrenia, or other mental health pathology to suffer without
proper treatment. Yet, sex offenders are left untreated for years
to suffer imprisoned in the CDOC. It is shocking to the conscience
to any who consider it that treatment would be denied to a sex
offender patient to whom treatment has been court-ordered and/or
prescribed by a mental health professional.

The denial becomes more egregious in a modern era of tele-
health, Zoom and WEBEX video conferencing, and myriad other options
that allow for psychological care where needed that sex offenders
should continue to suffer without needed treatment. The solution
is so readily apparent that the General Assembly discussed tele-
health treatment to prevent unnecessary backlog in the CDOC on
page 10 of Senate Bill 23-164. This Act has been signed by Gov-
ernor Polis as of 5 June 2023. Colorado is a Psychology Inter-
Jurisdictional Compact (PSYPACT) state. CRS Sec. 24-60-3901 et
seq. Licensed therapists could be recruited from any of the 48
U.S. PSYPACT states to treat prisoners.

It is settled law that an indeterminately sentenced sex off-
ender has a liberty interest in obtaining SOTMP treatment. As
SOTMP is inextricably intertwined with obtaining eligibility to
be paroled, any denial of access to SOTMP will extend the period
of imprisonment in the CDOC. This is a denial of the sex offender's
procedural and substantive due process rights. Senate Bill 23-164
advises that the parole board release guideline instrument must
not include the determinately sentenced prisoner's inability to
access treatment during incarceration. It is impermissible to
use SOTMP treatment as an arbitrary hurdle that cannot be met to
prevent prisoners from becoming eligible to be paroled.

SOTMP is mental health treatment; Mental health treatment is
medical treatment. The treatment is known to be most effective
when provided as near to an offense as is practicable, and to
withhold a needed treatment as prescribed is deliberately in-

different to a serious medical need; a willful and wanton disregard for the Plaintiff's Constitutional rights. The denial cannot be deemed to serve any legitimate penalogical interest.

This Civil Action seeks remedy for the denial of SOTMP treatment suffered by the Plaintiff. The remedy sought shall include policy change in the CDOC; all sex offenders shall be given immediate access to their necessary mental health care, which is SOTMP treatment. Expanding the treatment to all sex offenders immediately is the only remedy that will ensure that this Plaintiff is not denied the care that has been prescribed and is needed. This action also seeks damages in an amount to be determined by a jury for the injury suffered by the denial of care to date, the deliberate indifference to the Plaintiff's serious mental healthcare need. The Plaintiff also seeks declarative and injunctive relief such that the CDOC not be permitted to deny healthcare and to permit suffering to additional sex offenders in the future.

*   *   *

D.    **STATEMENT OF CLAIMS**

### FACTUAL BACKGROUND

Plaintiff Information:

1.    The Plaintiff, _Jeffrey Delbridge_, was found guilty of charges of _Sexual Assault on a child by one in position of trust_
(Mark one)
[  ] at trial
[✗] by plea agreement
on _11/07/2022_ (date)

2.    The Plaintiff was sentenced to:
(Mark one)
[✗] An indeterminate period of _7_ years to life.

[  ] A determinate period of ____ years.

3.    The Plaintiff is required to participate in SOTMP treatment:
(Mark all that apply)
[✗] Under SOLSA, CRS Sec. 18-1.3-1004(3), sex offender treatment is statutorily mandated.

[✗] By referral, the CDOC Mental Health staff has prescribed sex offender treatment.

[✗] By policy, CDOC AR 700-19(IV)(B) states that "offenders who have a judicial determination of a sex offense and are classified as an S5 may be subject to recommendation for sex offnse specific treatment."

[  ] Other: _____

4.    This paragraph [✗] does apply  [  ] does not apply to this Plaintiff:  The Plaintiff was seen by a psychosexual evaluator at the Denver Reception and Diagnostic Center (DRDC) at the time when he entered the CDOC.  A diagnosis was made in relation to sex-specific, along with any additional non-sex-specific mental health needs.  SOTMP was prescribed, in addition to any non-sex-specific mental health treatment.

Evaluator name and date of evaluation: _UNknown eValuator December 2022_

5.    (Mark all that apply)
[✗] The Plaintiff has been denied access to SOTMP while he has been imprisoned.

8



⌧ The Plaintiff is on the Global Referral List (GRL) waiting for treatment.

[ ] The Plaintiff entered SOTMP treatment on _____ (date) and was terminated from SOTMP on _____ (date).

[ ] The Plaintiff was terminated from SOTMP without cause and without a hearing.

[ ] The Plaintiff was terminated from SOTMP with the given cause: _____

[ ] The Plaintiff has a 5(D), 5(I), 5(L), 5(P), or other qualifier pursuant to AR 700-19(IV)(B) that deprives him of access to SOTMP treatment currently.

6. The Plaintiff was incarcerated on _12/05/2021_ (date), and has been imprisoned for _1460_ days as of today's date. His Parole Eligibility Date is/was on _03/2027_ (date).

**(Mark all that apply)**

⌧ The Plaintiff is not yet eligible for parole, and is being denied SOTMP treatment.

⌧ The Plaintiff is within 18 months of his PED; his inability to access SOTMP treatment to date has foreclosed options of progressing to lower security level facilities, to be considered for Community Corrections, or to timely complete SOTMP before he will be seen by the parole board.

[ ] The Plaintiff is beyond his Parole Eligibility Date but is statutorily ineligible because he has been denied access to SOTMP treatment making it impossible to successfully progress in treatment.

[ ] The Plaintiff is beyond his Parole Eligibility Date and is functionally ineligible because he has been denied access to SOTMP treatment. The parole board has denied this Plaintiff consideration for parole on grounds that he has not completed SOTMP treatment.

*   *   *

**SEX OFFENDER TREATMENT AND MONITORING PROGRAM FACTS:**

**7.** Nothing in the instant civil action is to be liberally misconstrued to mean that this Plaintiff will refuse "miraculous" placement into SOTMP at any time before resolution of this litigation as is commonplace among those that do bring suit against the CDOC for denial of SOTMP. Nor does the Plaintiff exempt himself from any relief obtained through litigation in any similar case for which he may be a class member.

**8.** Denial of access to the SOTMP program has imposed an atypical and significant hardship on the Plaintiff in relation to the ordinary incidents of prison life by rendering him ineligible for parole.

**9.** Denial of parole to this Plaintiff is a certain event that will occur as anticipated if the Plaintiff is not granted relief.

**10.** The language of CRS 16-11.7-103 is couched in the terms of mental health treatment and counseling.

**11.** CRS 16-11.7-102(4) defines "treatment" as "therapy, monitoring, and supervision of any sex offender which conforms to the standards created by the board pursuant to section 16-11.7-103."

**12.** CRS 16-11.7-103(4)(a)(I) uses the language, "There is currently no way to ensure that adult sex offenders with the propensity to commit sexual offenses will not reoffend. Because there are adult sex offenders who can learn to manage unhealthy patterns and learn behaviors that can lessen their risk to society in the course of ongoing treatment, management, and monitoring, the board shall develop a procedure for evaluating and identifying, on a case-by-case basis, reliably lower-risk sex offenders whose risk to sexually reoffend may not be further reduced by participation in treatment as described in paragraph (b) of this subsection (4)."

**13.** CRS 16-11.7-103(4)(b)(I) goes on to say, "Treatment options must be determined by a current risk assessment and evaluation and may include, but need not be limited to, group counseling, individual counseling, family counseling, outpatient treatment, inpatient treatment, shared living arrangements, or treatment in a therapeutic community."

**14.** Based upon the plain language of the statutes as implemented by the general assembly, there can be no doubt to any reasonable jurist that the intention of the general assembly is to recognize sex offenders as suffering from a

mental health pathology.

15 . Sex Offender evaluators are required by statute to be qualified and credentialled as sex-offender specific treatment providers by the Department of Regulatory Agencies (DORA), see CRS 16-11.7-106(1)5)(b).

16 . "[T]he best time for an offender to receive treatment is as close to the period in which he offended as possible." See Godinez v. Williams, 2022 U.S. Dist.LEXIS 93203 *37, Judge R. Brooke Jackson quoting testimony of Thomas Leversee as given on 24 February 2014 in a state court evidentiary hearing.

17 . Delaying treatment to a sex offender can serve no legitimate penological interest. Lacking resources does not give rise to a legitimate penological interest. (e.g., a food shortage would not legitimize denying meals to prisoners. A penicillin shortage would not legitimize permitting prisoners to suffer an infection. Nor shall a shortage of SOTMP resources legitimize allowing prisoners to suffer with sex-offense related mental health disorders and symptoms.)

18 . To delay SOTMP treatment while a sex offender is imprisoned serving his sentence, awaiting him to reach the 4-years-until-his-parole-eligibility-date (PED) mark, as contemplated by AR 700-19, is in direct controvention to the statutory goal of reducing risk to the public.

19 . Considering arguendo, the potential for additional sex offenses is not eliminated through imprisonment; giving the statutes the full faith as given by the Judiciary: Other prisoners are potential victims of an untreated sex offender (see Prison Rape Elimination Act (PREA)); prison staff and visitors are also in harm's way if the sex offender is not treated. Under these considerations, a reasonable judge could not hold that the general assembly had the intent to delay treatment to imprisoned sex offenders when the Statute was enacted.

20 . One convicted under SOLSA must "successfully progress[] in treatment" in order to be eligible for consideration for parole. If denied access to the treatment he will languish in prison indefinitely, in effect until his death.

21 . The Global Referral List (see AR 700-19) is "effectively a sham," as it has been stated in other litigation. AR 700-19 is CDOC official policy under the direct control of these Defendants.

22 . The Defendants have knowingly, unreasonably, willfully and wantonly denied care to prisoners in their custody, especially the Plaintiff. Institution of a waiting list, the GRL, pursuant to AR 700-19 is open admission that sex offender

patients will go without care, and that the fact of the denial is known to the Defendants.  It can never be reasonable to deny needed health care.  The Defendants have denied care for serious mental health needs without regard to the rights and safety of the Plaintiff.

23 .  If the Defendants do not provide SOTMP treatment, necessary mental health care to the Plaintiff, while he is imprisoned, that need will go unmet.  Serious harm will come to every sex offender patient that goes without SOTMP treatment and mental health care.  Some injuries cannot be seen with the eye — a mental health injury is an injury in fact.

24 .  Inadequate staffing that causes serious mental health care needs to go untreated constitutes deliberate indifference to serious mental healthcare needs of a prisoner.  The backlog of patients awaiting SOTMP is directly tied to the years-long staffing shortages.  The Defendants have failed to maintain adequate staffing levels to attend to the mental healthcare needs of sex-offender prisoners.  CDOC has an estimated minimum of one-thousand sex offenders in its custody receiving zero mental health care, zero SOTMP, zero attention to that serious mental health need.

25 .  Staffing is directly controlled by the named Defendants.  The Defendants participate directly and individually in the staffing decisions at CDOC.

26 .  The State must provide an inmate with a healthy habilitative environment. In denying sex offenders SOTMP treatment, the CDOC has failed in providing a healthy habilitative environment to the sex offender, and to the other prisoners that surround every sex offender.

27 .  The passage of Senate Bill 23-164, signed into law by Governor Polis, acknowledges that the Defendants have denied necessary healthcare to prisoners. The Bill amends CRS 16-11.7-105(1)(C)(V-IX) to place onus on the CDOC to provide information to the SOMB regarding the "unnecessary backlog" of prisoners that require and await treatment.

28 .  S.B. 23-164 addresses access to telehealth (Zoom, WebEX, etc.).  The CDOC has deliberately impeded SOTMP via telehealth through its customs and policy. Meanwhile, post-COVID, telehealth for non-sex behavioral health is commonplace.

*     *     *

**MENTAL HEALTH FACTUAL BACKGROUND**

29. The statutes that surround codification of sex offenses frame the commission of these acts as a form of mental health disorder having roots in mental health pathology. In the Colorado Revised Statutes, in SOLSA, and elsewhere that sex offense commission, conviction, evaluation, and sentencing is referenced, the word "treatment" is used repeatedly. This is necessarily indicative of a mental health model.

30. Mental health is medical health. Mental health care is medical care.

31. The duty to provide prescribed mental health care is imposed upon the SOMB, the Executive Director of the Department of Corrections, the Warden of the prison where the Plaintiff is held, and all named Defendants. The Eighth Amendment guarantees prisoners care; denial of medical or mental health care is cruel and inhumane.

32. Sex offenders are diagnosed by mental health professionals. The diagnosis of each sex offender is unique to the sex offender. Each may be diagnosed with a sex-specific sex-related disorder, hypersexual disorder, a paraphillic disorder, a sexual behavioral disorder, or any other DSM-5 recognized disorder, or any combination thereof.

33. The symptoms of these disorders are as myriad and diverse as the sex offenders themselves. In the same manner that Major Depressive Disorder (MDD) has symptoms which include dysphoria and anhedonia (defined as sustained sadness/unhappiness and an inability to experience enjoyment, respectively) See [American Psychological Association, DSM-5 (2013)]; sex-related disorders have symptoms suffered by sex offenders diagnosed with these disorders.

34. Sex-related disorder sufferers may have any of the symptoms of MDD due to the prevalence of comorbidity. Additionally, they may have any of the symptoms of other comorbid disorders commonly suffered by sex offenders such as the Anxiety Disorders or Personality Disorders.

35. Sex-related disorder symptoms more unique to sex-related disorders may include but are not limited to: inappropriate sexual impulses, pederasty, hebophilia, paraphilliae, desires for non-consentual sex, frotage, dissociative identities, an uncontrollable desire to masturbate, anguish, undesired sexual thoughts (vis-à-vis: Obsessive Compulsive Disorder), shame, and grief.

36. Untreated sex-related disorders may lead to suicidal ideation and also

13

to suicidality.

**37** . Untreated sex offenders may develop psychosomatic symptoms as a result of underlying psychological and emotional symptoms. These include but are not limited to: stress, rashes, hives, acne, eczema, psoriasis, body aches and pains, hypertension, heart disease, tachycardia, hormonal imbalances, arrhythmias, palpitations, cancer, Crohn's Disease, Irritable Bowel Syndrome, fatigue, etc.*

**38** . Sex offenders suffer actual physical pain and distress when their serious mental health needs go unmet; when their sex-related mental health disorders go untreated. Psychosomatic symptoms are a form of torture if untreated.

**39** . The Plaintiff, who is a convicted sex offender and has been evaluated by a CDOC mental health professional and found to require SOTMP treatment, and has been duly prescribed SOTMP treatment, suffers from symptoms as described above. His symptoms may include one, several, or all of the symptoms of sex-related disorder or of any related comorbid DSM-5 diagnosis. His symptoms may range from mild to severe.

**40** . The Plaintiff shall provide UNDER SEAL an affidavit outling the lurid details of his unique set of symptoms upon the ORDER of the Judge or Magistrate if it is deemed to be necessary and appropriate. See: Health Insurance Portability and Accountability Act (HIPAA) privacy provisions.

---

*References:
1. Al'abadie, et al., The Relationship between Stress and the onset and exacerbation of psoriasis and other skin conditions. Br. J. Derm. 199:203 (1994)
2. Brown & Bettley, Psychiatric Treatment of Eczema: A Controlled Trial. British Medical Journal Vol. 2, No. 5764 (Jun. 26, 1971) pp. 729-734
3. Eysenck, Hans, "Personality, Stress, and Cancer: Prediction and Prophylaxis" British Journal of Medical Psychology. 61:57-75 (1988)
4. Eysenck, Hans, "Personality, Stress, and Disease: An Interactionist Perspective" Psychological Inquiry. Vol. 2, No. 3 (1991) pp. 221-232
5. Kubzansky, L.D., et al., Positive psychological well-being and cardiovascular health promotion. Journal of the American College of Cardiology, Vol. 72 No. 12 (2018) pp. 1382-1396
6. Latimer & Campbell, Behavioral Medicine and the Functional Bowel Disorder, International Journal of Mental Health. Vol. 9, No. 1-2 (Spring/Summer 1980) pp. 111-128.
7. Suls & Howren, Understanding the Physical-Symptom Experience: The Distinctive Contributions of Anxiety and Depression, Current Directions in Psychological Science. Vol. 21, No. 2 (April 2012) pp. 129-134
8. Walker, N., The Definition of Psychosomatic Disorder, British Journal of Philosophical Science, Vol. 6, No. 24 (Feb. 1956) pp. 265-299

## SOTMP; MENTAL HEALTHCARE OR PUNITIVE MEASURE?

**41.** Many convicted sex offenders have chosen either to accept a plea agreement or to proceed to trial based upon SOTMP statutes. The advice of their respective counsellors was based upon their understanding of the CDOC and the SOTMP treatment circumstances they expected their clients to encounter. The only way to ensure accurate advice is to institute a policy of immediate treatment for every convicted sex offender that enters the CDOC. Any other system injects confusion and inconsistency into SOTMP treatment, and sentencing.

**42.** Either sex-offender SOTMP treatment is genuine and legitimate mental health care, or it is not. If SOTMP treatment is not legitimate mental health care, then it is something else. If SOTMP is something else (e.g., it is an additional punitive component to a sex offender's sentencing) it must be up to the discretion of the sentencing judge under the auspices of sentencing guidelines. It may not be an arbitrary and capricious measure left to the CDOC.

**43.** The Defendants do not adhere to treatment that is endorsed by the American Psychological Association, to the risk-need-responsivity (RNR) model, or to the best practices of empirically-researched evidence-based methods for treatment of sex offenders. In practice, the SOTMP instead comprises group confessions, self-flagellation and shaming, and examination with polygraphs. The emphasis is placed on admission to narratives that may or may not be based in factual reality, in lieu of an emphasis based on healing.

**44.** The government has created a system that treats sex offenders differently than all other offenders. Through the statutes of the general assembly, and the custom and policy of the executive CDOC, mental healthcare has been inextricably intertwined with imprisonment. Offenders of other categories of crime are not automatically diagnosed with mental health disorders by statute, custom or policy by dint of their convictions in the same manner as the sex offender. (e.g., a thief is not diagnosed as having a personality disorder by statute.) The Defendants may not maintain such a system while simultaneously standing idly by as it fails to provide the very care that it demands its prisoners complete.

**45.** The CDOC has weaponized the treatment requirement against sex offenders to prevent this class of prisoners from becoming eligible for consideration for parole. The aim is to extend CDOC custody of these prisoners indefinitely, to maximize the cost to the taxpayer, and to increase its own perceived relevance.

**46.** A CDOC prisoner that attempts suicide and survives will be moved to Centennial Correctional Facility and enter the Residental Treatment Program.

**47.** A CDOC prisoner with additional mental health diagnoses, for example if he suffers from schizophrenia, may be moved to San Carlos Correctional Facility or Colorado Mental Health Institute at Pueblo (CMHIP) and treated with medication, talk therapy, or both. The diagnoses will not go untreated.

**48.** Prisoners with sex-related mental health care needs are treated differently from prisoners with non-sex-related mental health care needs.

**49.** A CDOC prisoner in SOTMP treatment or waiting for placement in SOTMP will endure under the threat of arbitrary and capricious removal from treatment or loss of pending placement at the hands of any CDOC staffer for actual or invented disciplinary offenses, even if slight. In addition, he may be indentured into less desirable work assignments, be the target of false allegations of COPD violations and/or harassment, or in other manners overpoliced.

**50.** A CDOC prisoner convicted of a sex offense that does not receive treatment will not be eligible for progressive moves to minimum or minimum restricted security level facilities. This is an impediment to re-adaptation to a community environment from the prison environment.

**51.** A CDOC prisoner that claims to suffer from opioid withdrawl will be placed on Medication Assisted Treatment (MAT program) and receive Suboxone without delay. The sex offender will wait many years — even decades — for treatment.

**52.** The legislative intent of sex offender statutes was never to imprison sex offenders for life. The intent of the laws was to ensure that sex offenders were to receive treatment before being returned to the communities of the state, to reduce reoffending as low as is practicable, and to maintain an increased level of deterrence during parole by maintaining the threat to return a parolee that does reoffend to incarceration for life. See: Senate Judiciary Committee 2nd Session 61st General Assembly, statements made by Senator Wells prior to passage of 1998 Colorado House Bill 1156

\*    \*    \*

## D.     STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: **42 USC Sec. 1983—PROCEDURAL DUE PROCESS—US Const. Amendment XIV**

Claim one is asserted against these Defendant(s): **ALL DEFENDANTS**

### I.     What did each Defendant do to Plaintiff?[*]

53. Plaintiff incorporates by reference all other paragraphs of this Complaint as if set forth in full here.

54. The Plaintiff has been denied access to SOTMP Sex Offender Treatment.

55. The Plaintiff has not been provided with any meaningful opportunity to contest the deprivation of SOTMP treatment, meaningful review of the denial of treatment, alternatives to categorical denial, or recourse for the denial.

56. A person convicted under SOLSA has a clearly established liberty interest in accessing SOTMP treatment; this Plaintiff has been denied SOTMP treatment.

57. To be eligible for parole a convicted sex offender must successfully progress in treatment; this Plaintiff has been denied SOTMP treatment.

58. Plaintiff has been blocked by the Defendants from accessing telehealth treatment, Zoom or WebEX access to outside practitioners, or any other alternative method of obtaining SOTMP treatment.

59. Each Defendant has participated in maintaining a custom or policy of denial of SOTMP sex offender treatment to CDOC prisoners, especially the Plaintiff. The GRL is evidence of the knowing state of mind of Defendants.

60. The Defendants have caused the Plaintiff to suffer a grievous loss by denying him sufficient process to resolve his deprivation of SOTMP treatment.

---

[*]Roman Numerals I, II, III & IV are from Naslous v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007)

### CLAIM ONE (Cont.)

II.    **When did the Defendants deny Plaintiff access to SOTMP?**
Beginning at the time of diagnosis to present.

III.    **How did the Defendants' denial harm the Plaintiff?**  The
Plaintiff was denied his liberty interest; he was denied the ability
to become eligible for consideration for parole.

IV.    **What specific legal right did the Defendants deny Plaintiff?**
The Plaintiff has a Fourteenth Amendment protected right to due process
of the law.

D.    **STATEMENT OF CLAIMS**

### CLAIM TWO

**42 USC Sec. 1983—SUBSTANTIVE DUE PROCESS—U.S. Const.
Amendment XIV; Asserted against ALL DEFENDANTS**

I.    **What did each Defendant do to Plaintiff?**

61.  Plaintiff incorporates by reference all other paragraphs of this Complaint
as if set forth in full here.

62.  The Defendants, as functionaries of the government, have arbitrarily
deprived this Plaintiff of the opportunity to progress through his incarceration
and to become eligible for consideration for parole by denying his access to
required SOTMP Sex Offender Treatment.

63.  The deprivation of the opportunity to become eligible for consideration
for parole is a violation of a clearly established liberty interest to SOLSA
convicted sex offenders seeking SOTMP treatment.

64.  The Defendants have no adequate justification for their denial of care.

65.  The denial of sex offender treatment shocks the conscience, it is an
arbitrary and capricious abuse of authority, and serves no legitimate peno-
logical interest or other legitimate governmental interest.

66.  The use of a global referral wait list is open acknowlegment of the know-
ing state of mind of the Defendants; they know they are denying care to CDOC
prisoners in their custody.

67.  The existence of the global referral wait-list for years is demonstrative
of the deliberate and knowing choice by these Defendants to maintain the
arbitrary deprivation of mental health care to prisoners for whom care is
necessary and obligatory.

## CLAIM TWO (Cont.)

II.    **When did the Defendants deny Plaintiff access to SOTMP?**
Beginning at the time of diagnosis to present.

III.   **How did the Defendants' denial harm the Plaintiff?** The
Plaintiff was denied his liberty interest; he was denied the ability
to become eligible for consideration for parole.

IV.    **What specific legal right did the Defendants deny Plaintiff?**
The Plaintiff has a Fourteenth Amended protected right to due process
of the law.

D.     **STATEMENT OF CLAIMS**

### CLAIM THREE

**42 USC Sec. 1983—DELIBERATE INDIFFERENCE TO SERIOUS MENTAL
HEALTHCARE NEED—U.S. Const. Amendment VIII; Asserted against
ALL DEFENDANTS**

I.     **What did each Defendant do to Plaintiff?**

68.  Plaintiff incorporates by reference all other paragraphs of this Complaint
as if set forth in full here.

69.  Inherent or implicit in the statutory duty of governmental entities to
provide food, shelter, and if necessary medical treatment to all individuals
arrested or in custody is the duty to pay for such expenses.

70.  Deliberate indifference in violation of the Plaintiff's Eighth Amendment
right to medical care for serious mental health needs has occurred where the Defend-
ants repeatedly fail to address the mental healthcare requirements of the Plaintiff
as prescribed.

71.  Infliction of unnecessary suffering on a prisoner by failure to treat his
serious mental health needs is inconsistent with contemporary standards of decency
and violates the Eighth Amendment.

72.  Deliberate indifference to serious mental health needs of a prisoner con-
stitutes unnecessary and wanton infliction of suffering and anguish proscribed by
the Eighth Amendment; regardless of how evidenced, deliberate indifference to pri-
soners' serious mental illness or dysfunction states cause of action under civil
rights statutes.

73.  These elementary principles establish the government's obligation to pro-
vide mental health care for those whom it is punishing by incarceration.  An in-
mate must rely on prison authorities to treat his mental health needs; authorities

that fail to do so will leave those needs unmet.

    **74.** Mental health care has been prescribed in this case to the Plaintiff by a mental healthcare evaluator, a treatment professional employed by the CDOC.

    **75.** Prison officials, and all named Defendants, know that this care has been prescribed and have denied the prescribed treatment willfully and wantonly, knowingly and deliberately. There is no legitimate penological or other legitimate governmental interest in denying this care.

**II.**    **When did the Defendants deny Plaintiff access to SOTMP?** Beginning at the time of diagnosis to present.

**III.**    **How did the Defendants' denial harm the Plaintiff?** The Plaintiff has suffered from the symptoms associated with his sex offense specific mental health dysfunction. The Plaintiff also suffers with the additional symptoms associated with comorbid mental health disorders, e.g. depression, anxiety, physical pains, etc., that is without legitimate excuse. Proper mental healthcare has been denied to the Plaintiff.

**IV.**    **What specific right did the Defendants deny Plaintiff?** The Plaintiff has an Eighth Amendment protected right to be free from cruel and unusual punishments; i.e., denial of necessary prescribed mental health care.

*   *   *

### E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes  ⨯ No (*check one*).

*If your answer is "Yes," complete this section of the form.  If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit.  Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s): _____

Docket number and court: _____

Claims raised: _____

Disposition: (is the case still pending? has it been dismissed?; was relief granted?) _____

Reasons for dismissal, if dismissed: _____

Result on appeal, if appealed: _____

### F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions.  See 42 U.S.C. § 1997e(a).  Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

      __X__ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

      __X__ Yes ___ No (*check one*)

**F.    ADMINISTRATIVE REMEDIES (Cont.)**

The CDOC Grievance Process is a dead-end.  To grieve is futile. Those prisoners that do grieve the inability to access SOTMP treat- ment are met with boilerplate canned responses that read as follows:

A review of your [letter, grievance, etc.] and the concern you pre- sented was completed.  [Mr. _____], if the Sex Offender Treatment & Monitoring Program (SOTMP) understands your request, you feel like you should be placed immediately into treatment.  First [Mr. _____], congrat- ulations on taking the steps necessary to participate in SOTMP Treatment! A review of your records indicates you are currently on the Colorado Dept. of Corr. (CDOC) Global Referral Wait-List for SOTMP Treatment and are now waiting for your opportunity to participate.

(1.) Mr. _____, in looking at your treatment placement concern, please note that DOC AR 700-19 outlines the prioritization for clients for SOTMP treatment placement.  This regulation notes: "Offenders with judicial determination of a sex crime that are within four years of their parole eligibility date are prioritized for sex offense specific treatment based upon, but not limited to, the following: a) P.E.D. b) Risk for sexual re- cidivism c) prior SOTMP treatment opportunities d) institutional behavior

Mr. _____, due to the lifetime supervision act the SOTMP prioritizes those who have a liberty interest over those who have a mandatory release date.  You are on the list for treatment and if your placement on the GRL comes up before your MRD, you will be placed in treatment.

Your current status appears correct as you are on the DOC Global Refer- ral Wait-List for SOTMP Treatment and will be placed into treatment based upon DOC AR 700-19 prioritization.

Nevertheless, the DOC and SOTMP would like to encourage you to partici- pate in any DOC treatment, including your future opportunity at SOTMP treat- ment.  The DOC is dedicated to providing opportunities for a client's pote- ntial success.  Research of the SOTMP and other treatment programs have shown to have an impact on recidivism.  As such, Mr. _____, the SOTMP hopes that this information will aide (sic) you in knowing that clients who are motivated and participate in the SOTMP and other treatment programs tend to be more successful when released.  The SOTMP hopes that you take advan- tage of this or any other DOC treatment opportunity.  -Jaime Bailey, FCF

For decades prisoners have grieved the CDOC denial-of-access to SOTMP matter, to include Mr. Beebe, Mr. Tillery, Mr. Lerner & Aigner, Mr. Wismer; and class representatives of D. Colo. 24-cv-1853; scores of active SOTMP access cases in active litigation now; and hundreds of prisoners too numerous to list.  All categorically denied.

[  ] This Plaintiff has exhausted the administrative remedies; his grievances are attached.

[✗] This Plaintiff has exhausted the administrative remedies; the futility exception applies.
"The futility exception generally applies when administrative relief is effectively foreclosed. This may occur in two situations: (1) for another inmate same grievance there has been an adverse decision disposing of the precise issue raised by the petitioner, or (2) other inmates' same grievances have been met with a policy of categorical denial." King v. Cioili, 2023 U.S. Dist.LEXIS 65179 *7 (internal quotes and citations omitted) also, Ross v. Blake, 578 U.S. 632, 643 (2016)

## G.     REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

76. That process issue to the Defendants that they be required to answer in the time allowed by law.
77. A trial by jury on all issues triable by jury.
78. Plaintiff's costs in bringing this action and other reasonable costs, e.g. attorney fees if incurred, etc.
79. Declaratory relief, the Court shall declare the Plaintiff has a liberty interest and/or Constitutional right to the immediate access to SOTMP treatment.
80. Injunctive relief, the Court shall enjoin the Defendants from denial of mental health care that is prescribed by a mental health professional; i.e. SOTMP treatment.
81. Plaintiff be awarded actual damages in an amount to be determined by a jury.
82. Plaintiff be awarded exemplary damages in an amount to be determined by a jury.
83. Any and all further relief to which the Plaintiff may be entitled that the Court may deem to be just.

## H.     PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_____
(Plaintiff's signature)

12/04/2025
_____
(Date)

The foregoing Complaint was compiled and prepared at the Plaintiff's specific direction with the assistance of lay-person Eric St. George pursuant to Johnson v. Avery, 393 US 483 (1969), and Bounds v. Smith, 430 US 817 (1977)

(Revised November 2022)

D.        STATEMENT OF CLAIMS

          CLAIM FOUR

          Breach of Contract—Colorado Statute and Universal Commercial Code violation; Asserted Against ALL DEFENDANTS

I.        What did each Defendant do to Plaintiff?

84.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if set forth in full here.

85.    The Plaintiff entered into a plea agreement with the State of Colorado; the terms of the agreement were that he agreed to waive his right to a trial by jury in exchange for favorable sentencing in criminal case: _21CR6180_

86.    The Plaintiff accepted the terms of his plea agreement in the criminal case [named immediately above] under the auspices of receiving SOTMP upon his arrival in CDOC.

87.    The State of Colorado guaranteed and promised to provide the Plaintiff with timely and coextensive with incarceration offense-specific treatment necessary to become eligible for parole.

88.    The Plaintiff has performed his end of the plea agreement.  He is a state prisoner held in the CDOC serving the agreed-upon sentence.

89.    A plea agreement is a binding contract between the Plaintiff and the State.  It is enforceable under contract law standards.

90.    The Plaintiff will not receive SOTMP treatment before he reaches his Parole Eligibility Date (PED).

91.    The Plaintiff has been denied required SOTMP treatment.  He is prejudiced by the inability to complete SOTMP which is required in order to become eligible to be paroled.

92.    On _March 2025_ (date), the Plaintiff was advised by _Shannon Folz_ of the following: _I will not receive SOTMP before my PED_. This is violative of best practices as is statutorily mandated.  The Plaintiff is being subjected to treatment that is greater than that which is reflected in his assessed needs based upon his Level of Service Inventory--Revised (LSI-R) and STATIC-99 scores.  The Plaintiff entered the plea agreement contract under the assurances he would receive SOTMP treatment as mandated by best practices, meeting his risk, need, and responsivity category under the Risk-Need-Responsivity (RNR) model expicitly mandated in statute.

II.    **When did the Defendants deny Plaintiff access to SOTMP?**
        Beginning at the time of the plea agreement contract to present.

III.    **How did the Defendants' denial harm the Plaintiff?**
        Plaintiff signed a contract with the State in good faith; the breach
        of contract denies him the ability to become eligible for parole consideration.

IV.    **What specific legal right did the Defendants deny Plaintiff?**
        The Plaintiff has a right to enforce specific performance under the contract
        -- here the plea agreement -- which is the state's obligation to provide
        him SOTMP treatment.  The Plaintiff has maintained his agreed-upon terms
        of the contract; the Defendants are in breach of contract.